UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

TAMMY SCHMIDT,

        Plaintiff,

    v.                                    Case No.  08-230

EAGLE WASTE & RECYCLING, INC.

        Defendant.

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

**<u>INTRODUCTION</u>**

On November 13, 2008, Eagle Waste & Recycling, Inc. ("Eagle") filed a motion with this Court requesting that it grant summary judgment to the Defendant.  On December 4, 2008, Plaintiff Tammy Schmidt ("Schmidt") filed a responsive brief, an Affidavit of Tammy Schmidt, and a copy of Eagle's responses to Schmidt's first discovery requests.  However, Schmidt failed to comply with this Court's "Rules on Procedure to be Followed on Motions for Summary Judgment," when she neglected to file a document responding to Eagle's Proposed Findings of Fact.  As such, the Court should adopt as undisputed all Proposed Findings of Fact submitted by Eagle and find no issue of material fact.  *See, e.g., Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1010 (7th Cir. 1997); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).  Additionally, the affidavit submitted by Schmidt should be disregarded as a "sham affidavit", unsupported by documentation and contradicted by statements made by Schmidt in

her deposition taken on October 28, 2008.  Many of Schmidt's factual allegations contained in her brief can be characterized, at best, as disingenuous.

Most importantly, summary judgment should be granted to Eagle because Schmidt has been unable to refute the legal arguments tendered by Eagle in its motion.  Schmidt erroneously bases her arguments on the 1993 Fair Labor Standards Act ("FLSA") regulations, which have since been revised and superceded by the regulations issued by the Department of Labor ("DOL") in 2003.  Schmidt also bases her argument on decisions rendered by the many circuits of the United States; none of these cases, with the exception of one decision, has been rendered by the Seventh Circuit.  Schmidt's citation to an unreported decision issued prior to January 1, 2007 should be disregarded under Federal Rule of Civil Procedure 32.1.

Finally, Schmidt cannot claim surprise that Eagle contends she is exempt under the outside sales exemption, the administrative employee exemption, or the combined exemption.  Schmidt had ample notice that Eagle intended to pursue these affirmative defenses through Eagle's Answer, Joint Rule 26(f) Conference Report, Eagle's discovery requests, Eagle's discovery responses, and Eagle's line of questioning at Schmidt's deposition.  Schmidt's attorney also focused parts of Mr. Albee's deposition on these affirmative defenses.  Therefore, the Court should grant summary judgment in this matter and dismiss the case in its entirety with prejudice.

## **STATEMENT OF FACTS**

Eagle hereby incorporates the Statement of Facts from its initial brief as well as the Proposed Findings of Fact submitted under the Western District's rules regarding Proposed Findings of Fact.  In addition, Eagle affirmatively states that Schmidt has failed to provide either the Court or Eagle with its response to Eagle's Proposed Findings of Fact and, similarly, has not filed any Additional Proposed Finding of Fact.  Accordingly, the Proposed Findings of Fact filed

by Eagle should be accepted as undisputed.  Defendant also has filed Additional Proposed Findings of Fact in a separate document in support of this reply brief.

## ARGUMENT

### I.  THE PROPOSED FINDINGS OF FACT SUBMITTED BY EAGLE SHOULD BE ACCEPTED AS UNDISPUTED.

Schmidt has failed to respond to Eagle's Proposed Findings of Fact ("PFOF").  *See Docket Generally, Additional Proposed Findings of Fact ("EAPF") ¶ 1.*  As such, Eagle's proposed facts should be accepted by the Court as undisputed.  *See, e.g., Hunt-Golliday*, 104 F.3d at 1010.  The Seventh Circuit has held that

> The parties bear the burden of identifying evidence that will facilitate the court in determining whether a material issue of fact exists.  We have repeatedly indicated that we and the courts below are not obliged to scour the record looking for factual disputes.

*Hunt-Golliday*, 104 F.3d at 1010, n.2.  The Seventh Circuit has emphasized the non-movant's burden to identify specific evidence so the movant can respond and the Court can determine whether a material issue of fact exists.  *Uhl v. Zalk Josephs Fabricators*, 121 F.3d 1133, 1135 (7th Cir. 1997).  If the non-movant fails to meet this burden, the courts may deem the facts proposed by the moving party to be admitted.  *Flaherty*, 31 F.3d at 453 (citing *Waldridge*, 24 F.3d at 922-23).

When a district court has a local rule requiring that factual representations be documented in a specific manner, the parties must follow these adopted and publicized rules or risk the court finding the opposing party's proposed facts undisputed.  *Waldridge*, 24 F.3d at 921-22.  The purpose of such local rules is:

> [T]o alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions.  They are, in short, roadmaps, and without them the court should not have

> to proceed further, regardless of how readily it might be able to
> distill the relevant information from the record on its own.

*Waldridge*, 24 F.3d at 923.

The Seventh Circuit has found that the Western District's "Rule on Procedure to be Followed on Motions for Summary Judgment" ("Western District Rule") must be followed by parties filing for, and responding to, summary judgment. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). The Western District Rule is an "exacting obligation . . . impose[d] on a party contesting summary judgment" whose purpose is "to highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute, explaining that district courts are not obliged in our adversary system to scour the record looking for factual disputes." *Waldridge*, 24 F.3d at 921-22.

In *Hedrich v. Board of Regents of the University of Wisconsin System*, the Seventh Circuit affirmed the Western District of Wisconsin's decision to accept as undisputed the moving party's PFOF due to the non-movant's failure to respond pursuant to the Western District Rule. *Hedrich v. Bd. of Regents of the Univ. of Wis. Sys.*, 274 F.3d 1174 (7th Cir. 2001). Although Hedrich filed a response to the University's summary judgment motion, she failed to properly support her response to the University's PFOF and her additional proposed findings of fact. *Hedrich*, 274 F.3d at 1177. Hedrick failed to state factual propositions singularly in numbered paragraphs and failed to cite with specificity admissible evidence to support her factual propositions. *Hedrich*, 274 F.3d at 1177-78. Accordingly, the Western District rejected her additional proposed findings of fact, adopting the University's PFOF in their entirety. *Hedrich*, 274 F.3d at 1178. The Seventh Circuit stated that "It is common to punish a party's failure to comply with summary judgment rules by ignoring that party's unsupported factual allegations and accepting as true those of the opposing party." *Hedrich*, 274 F.3d at 1178 (internal citations

omitted).  The court noted that "Both the local rules and a separate reminder that the court issued to the parties left no question that the court would consider only evidence that was set forth in the proposed finding of fact with the proper citation."  *Hedrich*, 274 F.3d at 1178.

In *Washington National Insurance Co. v. Hendricks*, the Western District of Wisconsin rejected a defense tendered when the defendants failed to follow the Western District Rule.  *Washington Nat'l Ins. Co. v. Hendricks*, 855 F. Supp. 1542, 1558 (W.D. Wis. 1994).  The defendants claimed that the plaintiff made "fraudulent inducements concerning the retrospective premiums owed, the anniversary date of the [insurance] contract and the meaning of the post-termination liability agreement" when tendering their misrepresentation defense.  *Washington Nat'l Ins.*, 855 F. Supp. at 1558.  However, the misrepresentation defense was not considered by the court because the defendants failed to propose any facts relating to this defense.  *Washington Nat'l Ins.*, 855 F. Supp. at 1558.

In *Waldridge*, the Seventh Circuit held that the district court was entitled to assume that "the facts as claimed and supported by admissible evidence by the moving party [were] admitted to exist without controversy" when the non-moving party failed to file the factual document required by the court.  *Waldridge*, 24 F.3d at 921.  Simply stated, because the plaintiff "neglected to present her version of the facts in the manner prescribed [the local rule], her memorandum 'fail[ed] to provide specific facts from which a reasonable juror could find that the Defendants' products caused Plaintiff's injuries'."  *Waldridge*, 24 F.3d at 923.

The Eastern District of Wisconsin is similarly strict, mandating adoption of the moving party's PFOF as undisputed when the non-moving party fails to properly reply pursuant to the applicable local rule.  *See, e.g., Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 992 (7th Cir. 2002) (finding that plaintiff failed to comply with local rule by filing PFOF consisting of cursory

answers such as "admitted", "disputed", "admitted in part and disputed in part" without citation to evidentiary material, resulting in the court's acceptance of the defendants' PFOF as undisputed); *Listle v. Milwaukee County*, 138 F.3d 1155, 1157, n.2 (7th Cir. 1998) (finding that "the plaintiffs effectively conceded the truth of the facts proposed by the county in the district court by failing to document their challenges with citations to the record"); *Werth v. Bd. of Dir. of the Pub. Schs. of the City of Milwaukee*, 472 F. Supp. 2d 1113, 1131 (E.D. Wis. 2007) (rejecting plaintiff's argument that ministerial duty to implement an individualized educational program did not support a finding of negligence in part because the plaintiff "fail[ed] to provide any proposed findings of fact regarding the IEP's contents"); *Des Jardin v. Briggs*, No. 06-C-461, 2007 WL 870121 (E.D. Wis. March 20, 2007) (cited pursuant to Fed. R. Civ. P. 32.1; see *Trotier Aff. ¶ 10, Ex. 9*) (accepting the defendant's PFOF as undisputed and concluding that there is no genuine material issue of fact due to plaintiff's failure to file a response to defendant's PFOF.)

Schmidt failed to file a response to Eagle's PFOF. *See Docket Generally; EAPF ¶ 1.* Accordingly, the Court should enforce the Western District Rule and accept those facts set forth in Eagle's PFOF as undisputed.  Schmidt had ample notice as to the Western District's Rule, receiving a copy on May 19, 2008, along with the scheduling order issued by the Court.  *Pretrial Conference Order, Docket No. 9; EAPF ¶ 2.*  Moreover, the requirements for responding to a moving party's PFOF are available on the Western District Court's website - http://www.wiwd.uscourts.gov/assets/pdf/BBCSummaryJudgmentProcedure.pdf (last visited Dec. 10, 2008).  *See referenced court website; EAPF ¶ 3.* As stated above, the Court should not be required to scour the record and a non-movant's brief in an attempt to glean whether the non-

movant disputes any of the moving party's PFOF.  Instead, the Court should accept those facts proposed by Eagle as undisputed, finding no issue of material fact in this matter.

## II.    THE AFFIDAVIT SUBMITTED BY SCHMIDT SHOULD BE DISREGARDED AS A "SHAM AFFIDAVIT".

The Affidavit submitted by Schmidt in support of her response should be disregarded under the "Sham Affidavit" Rule.  The courts of the Seventh Circuit have long followed the rule that "Parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."  *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (citing *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987) ("a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony."); *Babrocky v. Jewel Foods Co. & Retail Meat Cutters Union*, 773 F.2d 857, 861 (7th Cir. 1985); *Miller v. A. H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985)).  The *Allied Signal* court stated:

> When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.

*Allied Signal*, 75 F.3d at 1170 (internal citations and quotations omitted).

The Seventh Circuit has repeatedly applied the Sham Affidavit Rule to disregard factual allegations made in affidavits which contradict sworn deposition testimony.  *See, e.g., Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir. 1993); *Bank Leumi Le-Israel B.M. v. Lee*, 928 F.2d 232, 237 (7th Cir. 1991); *Richardson v. Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988); *Adelman-Tremblay v. Jewel Cos.*, 859 F.2d 517, 520 (7th Cir. 1988); *Diliberti*, 817 F.2d at 1263; *Babrocky* 773 F.2d at 861.  If the

Court were to allow such contradictions to be created by sham affidavits, "the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut." *Babrocky*, 773 F.2d at 861.  The Seventh Circuit has stated that:

> Summary judgment would be meaningless if litigants could manufacture genuine issues of material fact through self-serving and unsupported "admissions" materially different from positions taken in the past.  This is why courts do not countenance the use of so-called "sham affidavits," which contradict prior sworn testimony, to defeat summary judgment.

*United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670.00)*, 403 F.3d 448, 466 (7th Cir. 2005).  In *$30,670.00*, the court extended the Sham Affidavit Rule to also disregard affidavits which contradicted documents signed under penalty of perjury.  *$30,670.00,* 43 F.3d at 466-67.  The Seventh Circuit stated that the claimant/appellant could not "conjure a triable factual issue on the basis of his newfound and convenient respect for the truth, particularly when this 'truth' is unsupported by any evidence other than [his] say-so." *$30,670.00,* 43 F.3d at 466-67.

In *Ineichen v. Ameritech*, the court stated that although it was required to interpret evidence in the light most favorable to the non-moving party when considering summary judgment, "that does not allow [the plaintiff] to contradict deposition testimony with later-filed contradictory affidavits."  *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005).  Ineichen was a white, female former employee who brought a complaint under Title VII of the Civil Rights Act against her former employer, claiming race, sex, and disability discrimination. *Ineichen*, 410 F.3d at 958-59.  One of Ineichen's witnesses gave prior deposition testimony stating that management employees at Ameritech never commented on the fact that Ineichen was white and her replacement was African-American.  *Ineichen,* 410 F.3d at 963.  Ineichen later

filed an affidavit executed by this witness contradicting her deposition testimony and attempting to re-characterize and re-interpret her statements that no one ever differentiated between Ineichen and the replacement on the basis of race. *Ineichen*, 410 F.3d at 962-63. Because this affidavit directly contradicted prior sworn deposition testimony, the court disregarded the contradictory statements, stating that Ineichen would not be allowed to submit affidavits creating sham issues of fact which would contradict prior depositions. *Ineichen*, 410 F.3d at 963.

     **A.**     **Schmidt's Factual Assertions Are Contradicted by Her Testimony and Interrogatories.**

In support of her summary judgment response, Schmidt submitted a sham affidavit, the substance of which is contradicted by the sworn testimony she gave at her deposition and in the interrogatory responses she submitted. As such, her affidavit should be disregarded.

In paragraph 8 of her affidavit, Schmidt claims that the advertisements, mailers, and flyers she created were to promote the Company "generically" and not to benefit her individually. *Schmidt Aff., ¶ 8, Docket No. 23, Ex. 1; EAPF ¶ 4*. Her deposition testimony contradicts this allegation:

> Q.    As a salesperson, you obviously needed *to promote your own sales?*
> A.    Um—hum.
> Q.    What did you do to accomplish that?
>        . . .
> A.    At the Chamber things I would pass out my business cards. I would make these little flier things that you could rip the bottom off, like you see used cars. I'd hang those all around in any place I saw a bulletin board. Advertising in Chamber books and Headwaters Builder's Association stuff, books, word-of-mouth, contacts I'd come across.
>        . . .
> A.    Dropping off cards, making fliers, talking to people at all the things I sent to.

(emphasis added). *Schmidt Dep. 57:6-25, Docket No. 12; EAPF ¶ 5*.

In paragraph 9 of her affidavit, Schmidt claims that she merely input text into advertisements, and Mr. Albee would then edit the ad.  However, this contradicts Schmidt's response to Eagle's Interrogatory No. 4, in which Schmidt states, "I developed all the flyers, forms, procedures and spreadsheets." *Trotier Aff. ¶ 6, Ex. 5 (hereinafter "Ex. 5"); EAPF ¶ 6.*  In her deposition, Schmidt further contradicts her affidavit statement as follows:

A.      I did pretty much all the marketing for Eagle Waste as well.

Q.      What did that entail?

A.      All the advertising, all the—we had these slips like a sales—I don't know—call it a gimmick.  In our billing we put a sales flier in there for them to call for temporary service and we'd put "Happy Holidays" in those.  I designed all of those.  Any Chamber adds, [sic] newspaper ads.

*Schmidt Dep. 23:15-22, Docket No. 12; EAPF ¶ 7.*

In paragraph 10 of her affidavit, Schmidt claims that she designed the Eagle logo "under close direction of Mr. Albee," stating that "he directed me to include an Eagle, flag motif, and red, white, and blue, [sic] colors."  In her deposition, Schmidt claimed that she designed the logo, stating "*I wanted it to be American because our [competitors] were from France." Schmidt Dep. 24:1-2, Docket No. 12; EAPF ¶ 8,* (emphasis added).  Schmidt also stated "*We knew we wanted a flag and we knew we wanted an eagle." Schmidt Dep. 24:2-3, Docket No. 12 (emphasis added); see also Schmidt Dep. 17:23, Docket No. 12; EAPF ¶ 9.*

In paragraph 11 of her affidavit, Schmidt claims that Mr. Albee "closely monitored" many aspects of her job.  However, this is plainly contradicted by her claim that she "basically ran the business when Al wasn't around." *Schmidt Dep. 62:7-10, Docket No. 12; EAPF ¶ 10.*

In paragraph 15 of her affidavit, Schmidt claims that she did not have the discretion to recommend pricing.  However, this is directly contradicted by her response to Eagle's

Interrogatory No. 4 and her deposition testimony.  In her interrogatory response, Schmidt states "I had to determine pricing for all three types of accounts." *Ex. 5; EAPF ¶ 11.*  In her deposition, Schmidt stated that although she did not initially give pricing or recommendations to Mr. Albee, she eventually had the knowledge and authority to make these recommendations once she understood how to competitively price the services offered by Eagle  *Schmidt Dep. 15:18-16:1, Docket No. 12; EAPF ¶ 12.*

In her response brief, Schmidt makes a blatant misrepresentation to the court, claiming that Eagle did not have an overtime policy.  *Pl's. Br. p. 5, Docket No. 23, EAPF ¶ 13.*  Schmidt is aware that this is patently false.  Plaintiff's attorney questioned Mr. Albee repeatedly in his deposition regarding the written overtime policy at Eagle.  *See Albee Dep. p. 23:20-26:14, Docket No. 13; EAPF ¶ 14.*  Plaintiff submitted a copy of the overtime policy in Mr. Albee's deposition, identified as "Exhibit 8".  *Albee Dep. p. 23:20-21, Docket No. 13; EAPF ¶ 15.*  Moreover, this copy of the overtime policy was provided by Schmidt in her response to Eagle's request for production of documents. *Trotier Aff. ¶ 9, Ex. 8; EAPF ¶ 16.*

The affidavit submitted by Schmidt directly contradicts numerous sworn statement given by her through deposition testimony and discovery responses.  As such, these statements should be disregarded under the Sham Affidavit Rule.

## III.  SCHMIDT CANNOT CLAIM SURPRISE THAT EAGLE ARGUES SHE WAS AN EXEMPT ADMINISTRATIVE EMPLOYEE.

Schmidt claims that the Court must disregard Eagle's argument that she was an exempt administrative employee because Eagle did not raise such an affirmative defense explicitly and literally in its answer.  Eagle should be permitted to amend its answer, or alternatively have the answer deemed to be amended because Schmidt was given adequate notice through Eagle's responsive pleadings when Eagle denied in its Answer that she was a covered employee under

11

the FLSA and denied that Schmidt was a non-exempt employee, in addition to statements found in the Joint Rule 26(f) Conference Report, Rule 26(a) Disclosures, Eagle's discovery responses, Eagle's discovery requests, and direct questioning by Eagle's attorney during the deposition of Schmidt.  Moreover, the Federal Rule of Civil Procedure 15 provides for amendments by leave of the Court and amendments to conform to the evidence, and the evidence supports a finding that Schmidt was either an exempt outside sales employee or an exempt administrative employee.   Most egregiously, Schmidt should not be allowed to hide behind her misunderstanding of the FLSA in her re-characterization of Eagle's responses to Schmidt's requests for admissions.

### A. The Federal Rules of Civil Procedure and Decisions of the Seventh Circuit Dictate that Eagle Can Raise an Affirmative Defense of the Administrative Exemption in a Summary Judgment Motion.

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires*."  Fed. R. Civ. P. 15(a) (emphasis added).  The United States Supreme Court stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—leave sought should . . . be "freely given".

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Seventh Circuit has stated that "delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as the result."  *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005).  The *Curtis* court affirmed the district court's allowance of an affirmative defense to be raised for the first time at summary judgment.  *Curtis*, 436 F.3d at 711.  The Seventh

Circuit has also stated that "where the plaintiff has an opportunity to respond to a late affirmative defense, he cannot establish prejudice merely by showing that the case has progressed significantly since the defendants answered his complaint." *Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005).

The purpose of raising an affirmative defense in the answer is "to notify a party of the existence of certain issues." *Doubleday & Co., v. Curtis*, 763 F.2d 495, 503 (2nd Cir. 1985). A court may construe the summary judgment motion as a motion to amend the answer, and granting summary judgment permits such an amendment *de facto*. *Roloff v. Arabian Am. Oil*, 421 F.2d 240, 242 (2nd Cir. 1970). Moreover, "a district court may consider the merits of an affirmative defense—even one explicitly listed as such in Fed. R. Civ. P. 8(c)—raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond." *Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251 (S.D.N.Y. 2003) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2nd Cir. 2003) (allowing collateral estoppel to be raised as an affirmative defense even though raised for the first time in reply memorandum in support of summary judgment motion where plaintiff was provided with notice, had an opportunity to respond, and was not prejudiced by failure to plead the affirmative defense in answer)).

Courts in other circuits have allowed defendants to raise an affirmative defense that an employee was an exempt administrative employee under the FLSA when the affirmative defense was raised during summary judgment. *See, e.g., Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 697-98 (S.D.N.Y. 2005). In *Schwind*, the defendants did not request permission to amend their answer to raise the administrative, executive and outside sales exemptions until their reply memorandum of law in support of their motion for summary judgment. *Schwind*, 357 F. Supp. 2d at 699. The court allowed *de facto* amendment because "discovery was directed to the

possible applicability of these FLSA exemptions." *Schwind*, 357 F. Supp. 2d at 699. Additionally, counsel for the parties had a discussion before plaintiff's deposition in which defendant stated they did not waive the affirmative defenses of the administrative, executive and outside sales exemptions. *Schwind*, 357 F. Supp. 2d at 699. Thus, plaintiff's counsel could not prove surprise or prejudice that defendants would be asserting the administrative, executive, and outside sales exemptions. *Schwind*, 357 F. Supp. 2d at 699. The court also found that because the administrative and executive exemptions were raised in the memorandum in support of the initial summary judgment motion, the plaintiffs had the opportunity to respond in their response brief. *Schwind*, 357 F. Supp. 2d at 699.

At least one district court within the Seventh Circuit has specifically followed the New York district courts in allowing defendants to raise affirmative defenses on summary judgment. *USM Corp. v. SPS Techs., Inc.*, 102 F.R.D. 167, 171 n.2, (N.D. Ill. 1984). In *USM Corp.*, the District Court of the Northern District of Illinois rejected plaintiff's argument that the defendant waived its right to assert a *res judicata* defense by not pleading it as an affirmative defense in its answer. *USM Corp.*, 102 F.R.D. at 171 n.2 (*citing Weston Funding Corp. v. LaFayette Towers, Inc.*, 410 F. Supp. 980, 982 n.2 (S.D.N.Y. 1976); *Overseas Motors, Inc. v. Import Motors Ltd., Inc.*, 375 F. Supp. 499, 513 n.25 (E.D. Mich. 1974)).

Courts of the Seventh Circuit have allowed defendants to raise affirmative defenses at trial if deposition questions should have put the plaintiff on notice to the affirmative defense. In *Barron v. Lee Enterprises, Inc.*, the Central District of Illinois specifically held that defendants would be granted leave to file an affirmative defense asserting that the employees were exempt from the FLSA's overtime requirements under the Motor Carrier Act because the employer stated in its answer that the employees were exempt from the FLSA's overtime provisions even

though it did not specifically enumerate which exemptions.  *Barron v. Lee Enters., Inc.*, 183 F. Supp. 2d 1077, 1081-82 (C.D. Ill. 2002).  Thus, the plaintiff could not claim undue surprise and prejudice when the employer raised the issue of exemption under the Motor Carrier Act.  *Barron*, 183 F. Supp. 2d at 1081-82.  The defendants in *Barron* clearly stated in their answer that they considered their employees exempt from the overtime provisions of the FLSA without enumerating exact exemption.  *Barron*, 183 F. Supp. 2d at 1081.  Counsel for the defendants did not raise the issue of the Motor Carrier Act until deposition of plaintiff's expert witnesses and in supplemental disclosures of the expert witnesses.  *Barron*, 183 F. Supp. 2d at 1081.  However, allowing the defendants to raise the affirmative defense of the Motor Carrier Act on summary judgment "serve[d] the ends of justice by causing the pleadings to conform to the evidence." *Barron*, 183 F. Supp. 2d at 1081-82.  The court noted that the defendants "claimed from the time they filed their Answer, that Plaintiffs are exempt from the overtime provisions of the FLSA [and] conclude[d] that it would not cause undue surprise or be unduly prejudicial to Plaintiffs to allow Defendants to raise the issue of the exemption provided by the Motor Carrier Act." *Barron*, 183 F. Supp. 2d at 1082.

In *Kakkanathu v. Rohn Industries, Inc.*, the District Court of the Central District of Illinois allowed a defendant to raise an affirmative defense of failure to mitigate damages at trial even though a defendant had not otherwise pleaded this affirmative defense.  *Kakkanathu v. Rohn Indus., Inc.*, No. 05-1337, 2008 WL 4330144, at *1 (C.D. Ill. Sept. 17, 2008) (cited pursuant to Fed. R. Civ. P. 32.1; see attached decision, *Trotier Aff. ¶ 11, Ex. 10*).  The court found that the defendant did not waive its affirmative defense because the defendant "put Kakkanathu on notice" during his deposition when asking him questions about his job searches and when it disclosed its expert report that opined that, in light of the market labor trends,

Kakkanathu should have found alternative employment. *Kakkanathu*, 2008 WL 4330144, at *2. Accordingly, the court allowed the defendant to offer evidence in support of the affirmative defense of failure to mitigate damages. *Kakkanathu*, 2008 WL 4330144, at *2.

**B.    The Pleadings, Discovery Responses, and Discovery Requests Submitted by Eagle Gave Schmidt Notice that It Would Seek an Affirmative Defense under the Administrative Exemption and the Outside Sales Exemption.**

Schmidt's claims that Eagle failed to put her on notice that it would raise the affirmative defenses of the administrative exemption and the outside sales exemption misrepresent and, at best, ignore the plain language of Eagle's pleadings and discovery responses/requests. Moreover, these claims demonstrate a fundamental misunderstanding and unfamiliarity with the FLSA and its regulations.

First, Eagle made its position clear that Schmidt was an exempt employee under the FLSA when, in paragraph 7 of its answer, Eagle denied the allegation that Schmidt was a covered employee under the FLSA. *Trotier Aff. ¶ 8, Ex. 7 (hereinafter "Ex. 7"); EAPF ¶ 17.* Moreover, Eagle denied the allegation that Schmidt was a non-exempt employee for purposes of the FLSA, responsive to paragraph 9 of the complaint. *Ex. 7; EAPF ¶ 18.* Finally, Eagle articulated an affirmative defense that Schmidt's complaint failed to state a claim upon which relief can be granted. *Ex. 7; EAPF ¶ 19.* This affirmative defense subsumed all exemptions found under the FLSA: Schmidt could not state a claim under the FLSA because she was not a covered employee due to her status as an exempt outside salesperson and an exempt administrative employee.

Schmidt claims that Eagle failed to raise an inference of such affirmative defenses in its Joint Rule 26(f) Conference Report. *Trotier Aff. ¶ 5, Ex. 4 (hereinafter "Ex. 4"); EAPF ¶ 20.* In response to the first inquiry in the Joint Report, Eagle stated that it "denies that Ms. Schmidt is a non-exempt employee and denies that she worked more than 40 hours per week." *Ex. 4; EAPF ¶*

*20.* Under the section of the Joint Report calling for a specific statement of the material factual issues, Eagle included the following questions:

      (a)     Was Ms. Schmidt an exempt employee under the FLSA?

      (b)     Was Ms. Schmidt an "outside sales" employee as defined under the FLSA?

*Ex. 4; EAPF ¶ 21.*

Additionally, Eagle stated that it would request additional discovery with respect to Schmidt's job duties, indicating that it was analyzing her position for the application of any and all possible relevant exemptions under the FLSA.  (See 15(a) of the Joint Report.) *Ex. 4; EAPF ¶ 22.*  As such, Eagle has indicated throughout the Joint Rule 26(f) Conference Report that it would be raising the affirmative defenses of the outside sales exemption and the administrative exemption.  *Ex. 4; EAPF ¶ 23.*

The "smoking gun" of Schmidt's improper argument that Eagle failed to alert it to the existence of the application of the administrative exemption rests on Eagle's response to Request to Admit No. 8.  In her response brief, Schmidt blatantly misquotes her own Request to Admit, contorting it to support her failing argument.  *Br. in Opposition, Docket No. 23; EAPF ¶ 24.* The actual Request to Admit, which she declined to provide to the Court, is as follows:

      **REQUEST TO ADMIT NO. 8:**  Admit that Plaintiff was an "*administrator*" as that term is used under the FLSA.

      **RESPONSE:** Denies.

(emphasis added). *Trotier Aff. ¶ 3, Ex. 2 (hereinafter "Ex. 2"); EAPF 25.*

"Administrator" is defined under the regulations promulgated by the DOL pursuant to the FLSA.  Regulation 29 C.F.R. § 541.1 specifically states that the term "administrator" refers solely to the Administrator of the Wage and Hour Division, a subsection of the DOL.  29 C.F.R. § 541.1.  The Administrator of the Wage and Hour Division is a Presidentially-appointed

position, confirmed by the Senate.  In responding to Schmidt's Request to Admit No. 8, Eagle in good faith denied that Schmidt was the Administrator of the Wage and Hour Division, as designated in 29 C.F.R. § 541.1.  *Ex. 2; EAPF ¶ 26.*  Nowhere in her requests for admissions, did Schmidt ask Eagle to address whether she was considered an employee subject to the administrative exemption of the FLSA.  *Trotier Aff. ¶ 2, Ex. 1; EAPF ¶ 27.*  Accordingly, Schmidt's "smoking gun" must be disregarded.

Regardless of Schmidt's inability to fathom the definition of an administrator under the FLSA, Eagle's responses to Schmidt's discovery requests repeatedly stated that Eagle viewed her as an exempt employee.  For example:

> **RESPONSE TO INTERROGATORY NO. 12:**  Eagle objects to Interrogatory No. 12 on the grounds that it is vague, overbroad, and not reasonably calculated to lead to admissible discovery. Subject to these objections and without waiving same, Eagle states that Plaintiff was not required to keep time records *because she was an exempt employee.*

> **REQUEST TO ADMIT NO. 1:**  Admit that Plaintiff was a nonexempt employee under the Fair Labor Standards Act (FLSA) between the time of her hire and separation from employment.

> **RESPONSE:**  Denies.

> **R**EQUEST TO ADMIT NO. 2:  Admit that Plaintiff was an exempt employee under the FLSA between the date of her hire through separation as an employee.

> **RESPONSE:**  Admits.

> **REQUEST TO ADMIT NO. 11:**  Admit that Defendant Corporation does not have a written policy on overtime.

> **RESPONSE:**  Eagle objects to Request No. 11 on the grounds that it is irrelevant because Plaintiff was an *exempt employee*.  Subject to this objection and without waiving same, Eagle admits.

> **REQUEST TO ADMIT NO. 13:**  Admit that Defendant Corporation did not have a written policy on "holiday pay".

**RESPONSE:**  Eagle objects to Request No. 13 on the grounds that it is irrelevant because Plaintiff was an *exempt employee*.  Subject to this objection and without waiving same, Eagle admits.

**REQUEST TO ADMIT NO. 14:**  Admit that Defendant Corporation did not have a written policy on "comp-time" in lieu of overtime pay between the time of Plaintiff's hire and her separation from employment as those terms are used under the FLSA.

**RESPONSE:**  Eagle objects to Request No. 14 on the grounds that it is irrelevant because Plaintiff was an *exempt employee*.  Subject to this objection and without waiving same, Eagle admits.

**REQUEST FOR PRODUCTION NO. 2:**  All performance evaluations, job reviews or appraisals of Plaintiff whether it is contained in her personnel file or not.

**RESPONSE:**  Eagle objects to Request No. 2 on the grounds that it is irrelevant to the determination of Plaintiff's status as an *exempt employee*.  Subject to this objection and without waiving same, please see attached documents bates labeled EW000180-EW000182.

**REQUEST FOR PRODUCTION NO. 4:**  All records pertaining to all fringe benefits to which Plaintiff was entitled under her employment with Defendant Corporation including life insurance, health insurance, and pension contributions.  Please include with the documents requested herein a copy of any master policy of health insurance or health programs, a copy of any master life insurance policy and a complete copy of the pension plan or program to which Plaintiff was entitled to participate.

**RESPONSE:**  Eagle objects to Request No. 2 on the grounds that it is irrelevant to the determination of Plaintiff's status as an *exempt employee*.  Please see attached documents bates labeled EW000446-EW000465 & EW000475-EW000476.

(emphasis added). *Ex. 2; EAPF ¶ 28.*

Eagle's First Set of Interrogatories and Requests for Production of Documents focused its inquiries on Schmidt's job functions and duties performed. *Trotier Aff. ¶ 4, Ex. 3 (herinafter "Ex. 3"), Interrogs. No. 6, 16 & 17; EAPF ¶ 29.*  Interrogatory No. 6 specifically inquired as to time spent updating sales databases and planning or scheduling sales itineraries. *Ex. 3, Interrog.*

19

*No. 6; EAPF ¶ 30.* Both of these tasks are typical inquiries when determining whether an employee qualifies under both the outside sales exemption and the administrative exemption.

The questions asked by Eagle's counsel in Schmidt's deposition were clearly indicative of inquiries directed towards application of the administrative employee exemption. *EAPF ¶ 31.* Counsel for Eagle asked the following questions:

Q.   What kinds of forms were you creating?[1]

Q.   What kind of data entry did you do?[2]

Q.   Did you get to participate in determining strategy?[3]

Q.   Did you ever give him a recommendation or anything?[4]

Q.   Did you help him put together a proposal for it?[5]

Q.   How did you market to those people?[6]

Q.   What would you do then?
A.   Administrative.

Q.   What would—give me examples of the paperwork.[7]

Q.   Okay.  So you'd have to kinda have to direct them on pricing and stuff?[8]

Q.   Was there any kind of paperwork you had to do?[9]

Q.   Did you have to do sales reports or commission reports or anything like that?[10]

Q.   Did you have to do any work with data bases or anything?[11]

---

[1] Schmidt Dep. 13:13, Docket No. 12
[2] Schmidt Dep. 13:21, Docket No. 12
[3] Schmidt Dep. 15:15, Docket No. 12
[4] Schmidt Dep. 15:18, Docket No. 12
[5] Schmidt Dep. 16:7, Docket No. 12
[6] Schmidt Dep. 16:23, Docket No. 12
[7] Schmidt Dep. 20:16-22, Docket No. 12
[8] Schmidt Dep. 22:2-3, Docket No. 12
[9] Schmidt Dep. 22:8, Docket No. 12
[10] Schmidt Dep. 22:14-15, Docket No. 12

Q.      . . . Did you have to work on marketing materials or anything like that?[12]

Q.      Did you say that you designed a logo as well?[13]

Q.      . . . Did you kind of think of other places to put these adds [sic], other ways to get them out?[14]

Q.      Would you call and collect [from] people?[15]

Q.      How did you decide what areas to target?[16]

Q.      You were the face of Eagle then?
A.      Absolutely.
Q.      And you were the primary contact for these people?
A.      Yes.[17]

Q.      When you're kinda putting together your contracts for these people . . . these customers, did you have flat fees that were non-negotiable?[18]

Q.      What did you do to keep them happy?
A.      Don't screw them up.  When the driver forgets to pick them up, Tammy saves the day.
Q.      How do you save the day?[19]

Q.      You signed the service contracts?[20]

Q.      . . . No negotiation, no dickering . . .
Q.      Did you ever kind of cut them a little bit of a deal?[21]

Q.      Walk me through that process . . .
Q.      The process of figuring out the bid.[22]

Q.      Who made the form letter?[23]

[11] Schmidt Dep. 23:5, Docket No. 12
[12] Schmidt Dep. 23:13-14, Docket No. 12
[13] Schmidt Dep. 23:23, Docket No. 12
[14] Schmidt Dep. 24:10-11, Docket No. 12
[15] Schmidt Dep. 25:9, Docket No. 12
[16] Schmidt Dep. 27:2, Docket No. 12
[17] Schmidt Dep. 28:23-29:1, Docket No. 12
[18] Schmidt Dep. 29:2-6, Docket No. 12
[19] Schmidt Dep. 31:8-11, Docket No. 12
[20] Schmidt Dep. 35:10, Docket No. 12
[21] Schmidt Dep. 44:10-12, Docket No. 12
[22] Schmidt Dep. 49:18-20, Docket No. 12
[23] Schmidt Dep. 56:14, Docket No. 12

Q.      Did you have to kind of go through the bid process for this and figure out what the best range would be?[24]

Q.      You wrote the letter?[25]

Q.      . . . You mention that you assisted running the business a lot. You—I think there was something where you said you basically ran the business when Al wasn't around?

A.      Yes.

Q.      I'm going to ask you to elaborate on that a little bit more. What did that involve?[26]

Q.      You'd have to make a decision about something? . . .

Q.      What kinds of decisions?[27]

Q.      What do you mean "accounting decision"?[28]

Q.      I cut you off when you said the other decisions you had to make.[29]

Q.      Were these issues that had Al been there he would have dealt with?[30]

Q.      Did you ever have to deal with any personnel management issues like fighting employees, no-call, no-show, things like that?[31]

Q.      . . . Did you do anything to kind of make that connection with the municipalities, with the town clerks, with the governments?[32]

Q.      In your position, did you ever have to contact say a town, any kind of municipality, to try and make a deal, drum up business, give them a proposal?[33]

---

[24] Schmidt Dep. 59:10-11, Docket No. 12
[25] Schmidt Dep. 59:22, Docket No. 12
[26] Schmidt Dep. 62:7-12, Docket No. 12
[27] Schmidt Dep. 62:19-21, Docket No. 12
[28] Schmidt Dep. 62:25, Docket No. 12
[29] Schmidt Dep. 63:14-15, Docket No. 12
[30] Schmidt Dep. 63:24-25, Docket No. 12
[31] Schmidt Dep. 64:8-10, Docket No. 12
[32] Schmidt Dep. 64:22-23, Docket No. 12
[33] Schmidt Dep. 65:10-12, Docket No. 12

Q.      In your discovery responses you talked about working with a
        data base and entering information into a data base.  Can you
        explain that to me?[34]

Q.      What was the information you were putting into the data
        base?[35]

Q.      And then once the prospect information was in the data base
        how was it going to be used after that?[36]

Q.      As a sales person, you obviously needed to promote your own
        sales . . .
Q.      What did you do to accomplish that?[37]

Q.      How did you get your name out there to have people contact
        you for waste removal services?[38]

Q.      Were there any other reports you had to do?[39]

Q.      What kind of paper work?[40]

Q.      What do you mean by "computer work"?[41]

Q.      In your answer to Interrogatory 4, you said that you spent sixty
        to seventy percent of your time doing administrative work.
        You said you determined pricing as part of that work.  What did
        you do in determining pricing?[42]

Q.      You said you did municipality research; what does that

mean?[43]

Q.      You said you also made decisions or recommendations if you
        could service an account.  How did that come about?[44]

---

[34] Schmidt Dep. 65:24-66:1, Docket No. 12
[35] Schmidt Dep. 66:13-14, Docket No. 12
[36] Schmidt Dep. 66:16-17, Docket No. 12
[37] Schmidt Dep. 67:6-9, Docket No. 12
[38] Schmidt Dep. 67:22-23, Docket No. 12
[39] Schmidt Dep. 69:3, Docket No. 12
[40] Schmidt Dep. 71:6, Docket No. 12
[41] Schmidt Dep. 71:9, Docket No. 12
[42] Schmidt Dep. 101:21-24, Docket No. 12
[43] Schmidt Dep. 102:9-10, Docket No. 12
[44] Schmidt Dep. 102:23-24, Docket No. 12

Q.      You also said you spent time determining commercial pricing?[45]

Q.      . . . You talked about developing forms, flyers, spreadsheets, procedures.  Can you give me examples of those?[46]

A.      What else?
Q.      Spreadsheets, procedures.[47]

Schmidt's counsel argues that he should have been given the opportunity to question Schmidt's former employer, Alan Albee, at his deposition with respect to the administrative exemption.  However, Schmidt's attorney had ample opportunity to depose Mr. Albee and posed the following questions to him, which should have put him on notice that Defendant would be raising the administrative exemption as an affirmative defense on summary judgment:

Q.      . . . During Ms. Schmidt's time at Eagle, did her actual job responsibilities exactly match what was in the job description that you just looked at, Exhibit "1"?[48]

Q.      Does Exhibit "1" indicate anything about Ms. Schmidt's responsibility to step in and handle things at the business while you were away?[49]

Q.      And you heard her testify that she often stepped into "run" the office while you were away . . . Is that a fair characterization on her part?[50]

Q.      . . . You heard Tammy testify that she quite often designed advertising including the logo of the business; is that your understanding as well?[51]

Q.      How does Number 2 have to do with designing logos or advertising?[52]

---

[45] Schmidt Dep. 103:13-14, Docket No. 12
[46] Schmidt Dep. 103:18-19, Docket No. 12
[47] Schmidt Dep. 103:23-24, Docket No. 12
[48] Albee Dep. 11:13-15, Docket No. 13
[49] Albee Dep. 17-19, Docket No. 13
[50] Albee Dep. 12:1-4, Docket No. 13
[51] Albee Dep. 12:15-19, Docket No. 13
[52] Albee Dep. 13:3-4, Docket No. 13

Q.     Do you remember the part of her deposition where she testified that she helped stuff envelopes with the collection letters?

. . .

Q.     Do you know if she ever did that?

A.     Stuff envelopes with the collection letters?

Q.     Yes.[53]

Q.     Did she ever do clerical tasks similar to that, such as preparing mailings?[54]

A.     . . . It was a marketing tool that we would stuff into our monthly invoice mailing.

Q.     Okay. Who would draft that?[55]

Q.     Okay. Was she involved in collections?

A.     Yes.

Q.     Explain to me how she was involved in collections.[56]

Q.     Did Tammy supervise—did she have supervisory authority over anyone at the Company?[57]

*EAPF ¶ 32.*

The Court should not bar Eagle from raising the outside sales exemption affirmative defense, the administrative exemption affirmative defense, or the combined exemption affirmative defense at summary judgment. The courts of the Seventh Circuit have repeatedly held that defendants may raise such affirmative defenses on a summary judgment motion, as long as the plaintiff has an opportunity to respond. Schmidt has had the opportunity to respond in her responsive brief to Eagle's summary judgment motion. In this brief, however, she is unable to satisfy her burden of proving she suffered from surprise when Eagle raised these affirmative defenses.

---

[53] Albee Dep. 13:11-17, Docket No. 13
[54] Albee Dep. 13:19-20, Docket No. 13
[55] Albee Dep. 14:2-5, Docket No. 13
[56] Albee Dep. 14:7-9, Docket No. 13
[57] Albee Dep. 20:11-12, Docket No. 13

Furthermore, Eagle clearly stated through its Answer, Joint Rule 26(f) Conference Report, discovery responses, and discovery requests that it viewed Schmidt as an exempt employee under the FLSA. *EAPF ¶¶ 21-25 & 28-30.* Moreover, Eagle's deposition questions indicated both application of the administrative exemption and the outside sales exemption. *EAPF ¶ 31.* Finally, Schmidt's claim that she was "thrown off" or confused by Eagle's denial that Schmidt was an "administrator" as defined by the FLSA should be disregarded as disingenuous, or as a failure to read the regulations to the FLSA. As such, the Court should disregard Schmidt's argument that Eagle cannot raise the affirmative defenses of the outside sales exemption or the administrative exemption under the FLSA on summary judgment. Alternatively, Eagle requests that the Court provide it with the opportunity to amend, or to consider amended, its Answer to conform to the evidence under Fed. R. Civ. P. 15(a) & (b).

## IV.   EAGLE HAS SATISFIED THE APPLICABLE RECORDKEEPING REQUIREMENTS.

Schmidt incorrectly argues that Eagle was required to keep records of her hours worked. Eagle had no obligation to track Schmidt's weekly hours because she was an exempt employee under the outside sales exemption, the administrative employee exemption, and the combined exemption.

The regulations promulgated by the DOL set forth the recordkeeping requirements of all employees subject to the FLSA's minimum wage and overtime provisions. *See* 29 C.F.R. § 516.2(a). However, the regulations provide that:

> With respect to each employee in a bona fide . . . administrative . . . capacity . . . or in outside sales . . . employers shall maintain and preserve records containing all the information and data required by § 516.2(a) except paragraphs (a)(6) through (10) and, in addition, the basis on which wages are paid in sufficient detail to permit calculation for each pay period of the employee's total remuneration for employment including fringe benefits and prerequisites [sic].

29 C.F.R. § 516.3.  The relevant items required by § 516.2 are as follows:

> (1)     Name in full, as used for Social Security recordkeeping purposes, and on the same record, the employee's identifying symbol or number if such is used in place of name on any time, work, or payroll records,
>
> (2)     Home address, including zip code,
>
> (3)     Date of birth, if under 19,
>
> (4)     Sex and occupation in which employed (sex may be indicated by use of the prefixes Mr., Mrs., Miss. or Ms.) . . .
>
> (5)     Time of day and date of week in which employee's workweek begins . . .

29 C.F.R. § 516.2(a)(1)-(5).

As stated throughout this reply brief and in Eagle's initial brief, Schmidt was an exempt employee under the outside sales exemption, the administrative exemption, and, alternatively, the combined exemption.  Accordingly, Eagle was not required by the FLSA to track the hours worked by Schmidt on a weekly basis.  Therefore, the Court should disregard Schmidt's allegation that Eagle failed to meet its recordkeeping requirement and should similarly disregard Schmidt's unsupported claim that her calculations only need to be an approximation.

## V.     THE CASE AUTHORITY RELIED ON BY SCHMIDT IS IRRELEVANT AND NON-PRECEDENTIAL.

Schmidt cites *Champneys v. Ferguson Enterprises, Inc.*, No. IP 02-535-C H/K, 2003 WL 1562219 (S.D. Ind. March 11, 2003), a non-precedential unreported district court decision in an attempt to interpret the outside sales exemption.  Not only is this case unreported, it is irrelevant in that it serves solely to interpret a regulation which was rescinded when the revised FLSA regulations were issued in 2003.  *See Champneys*, 2003 WL 1562219, at *3 (citing 29 C.F.R. § 541.5).  Thus, any argument interpreting this regulation is irrelevant and should be disregarded.

In addition, Federal Rule of Civil Procedure 32.1 states that a court should not consider as authoritative judicial opinions which have been designated as "unpublished," "not for publication," "non-precedential," "not precedent," etc. if the decision was issued prior to January 1, 2007.  Fed. R. Civ. P. 32.1(a).  A party cannot cite to any such unpublished federal judicial opinion, even if issued after January 1, 2007, if the party fails to provide a copy of this opinion with their argument.  Fed. R. Civ. P. 32.1(b).  The *Champneys* decision is designated as "not reported" and was issued on March 11, 2003, prior to the qualification period set forth in Rule 32.1(a).  Moreover, Schmidt did not provide a copy of this decision with her brief.  Accordingly, any argument based on this decision should be disregarded.

## CONCLUSION

For the foregoing reasons, and those reasons stated in Eagle's initial brief, the Court should grant Eagle's motion for summary judgment and dismiss the complaint with prejudice.

Dated:  December 12, 2008.

DAVIS & KUELTHAU, s.c.
Attorneys for Eagle Waste & Recycling, Inc.


By:     s/Geoffrey S. Trotier
        Daniel G. Vliet
        State Bar No. 1010154
        Geoffrey S. Trotier
        State Bar No. 1047083



Direct Contact Information

Daniel G. Vliet          Tel:  414-225-1422
                         Fax:  414-278-3622
                         dvliet@dkattorneys.com

Geoffrey S. Trotier      Tel:  414-225-1484
                         Fax:  414-278-3684
                         gtrotier@dkattorneys.com

**CERTIFICATE OF SERVICE**

I certify that on December 12, 2008, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following ECF participant:

> Mr. Samuel C. Gold, Esq.
> Gold Law Firm
> 4825 Pike Bay Road, No. 11
> Eagle River, WI 54521

s/Megan A. Potter
Megan A. Potter
Paralegal