IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAMMY SCHMIDT,

                                                                         OPINION AND ORDER

                    Plaintiff,

                                                                        08-cv-230-bbc

     v.

EAGLE WASTE & RECYCLING, INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil action for monetary relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201-219.  Plaintiff Tammy Schmidt contends that defendant Eagle Waste & Recycling, Inc. violated the Act by failing to pay her overtime compensation for work she performed between September 2005 and February 2008, when she left the company. Jurisdiction is present.  28 U.S.C. § 1331.

Now before the court is defendant's motion for summary judgment in which defendant contends that plaintiff is not entitled to overtime compensation under the Fair Labor Standards Act because she is an exempt employee under the act, or, in the alternative, because she did not work more than forty hours a week.  Plaintiff disputes these contentions.

As an initial matter, plaintiff has failed to respond to the moving party's proposed

1

findings of fact and has failed to propose any facts she might need to defeat summary judgment. Procedure to be Followed on Motions for Summary Judgment II.A.1, II.B.1. Because plaintiff has failed to dispute defendant's proposed findings of fact, defendant's proposed findings of fact may be deemed undisputed. Id. at II.C.; Hedrich v. Board of Regents of University of Wisconsin System, 274 F.3d 1174, 1177 (7th Cir. 2001) (upholding Western District of Wisconsin's local rules regarding admitting moving party's proposed finding of fact when non-moving party fails to respond properly).

In an attempt to address her failure to follow this court's summary judgment procedures, plaintiff has moved for leave to file a sur-reply brief, corrected proposed findings of fact and responses to defendant's proposed findings of fact. Plaintiff argues that although she failed to follow this court's local rules she did make pinpoint citations to the record. She asks the court to grant her motion because it will not cause delay or prejudice defendant. Further, she asks for an opportunity to respond to plaintiff's argument regarding the "sham affidavit rule."

It is true that plaintiff's brief offers pinpoint citations to the record, but she does not organize the facts in a manner that allows defendant to dispute those facts. Her failure to follow the court's procedures prejudices defendant. Allowing her to file supplemental material now would require defendant to submit responses to plaintiff's proposed disputed facts and an additional reply brief after the original deadline for filing these documents. As

2

a result, defendant would have to duplicate its efforts and resolution of the case would be delayed.

Plaintiff has given no good reason why the court should alter the schedule and create additional work for defendant. She had ample notice of this court's procedures for filing and responding to summary judgment motions. On May 19, 2008, she was given notice of the trial schedule for this case, including the deadlines for filing dispositive motions as well as procedures for filing summary judgment motions. Dkt. #9, at 2-3, 13-17. Plaintiff chose to disregard those deadlines and rules without explanation.

Further, plaintiff delayed attempting to cure her procedural errors for no good reason. On December 12, 2008, plaintiff was made aware of her improper response when defendant filed its reply brief. Dkt. # 26. Rather then address the issue immediately, plaintiff waited an additional fourteen days before filing its current three-page motion, which she submitted without the documents she sought leave to file. If plaintiff had filed those documents at that time, it would have reduced the delay caused by her procedural errors. Plaintiff's motion will be denied and defendant's proposed findings of fact will be considered undisputed, except those that are argumentative, consist of legal conclusions or are not supported by evidence.

Next, plaintiff has moved to file a sur-reply brief to argue the proper standard for the "sham affidavit" rule. That motion will be denied as unnecessary because I have not

3

considered defendant's argument on the issue.

From the undisputed facts, I conclude that plaintiff's primary duty involved sales work and work related to promoting sales. Therefore, defendant is not required to compensate her for overtime under the Fair Labor Standards Act. However, even if plaintiff's primary duty did not involve sales, under the "combination exemption," 29 C.F.R. §541.708, plaintiff would not be entitled to overtime compensation because all of her duties involved exempt work under the Fair Labor Standards Act.

From defendant's proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. Parties

Plaintiff Tammy Schmidt was hired by defendant Eagle Waste and Recycling, Inc. in September of 2005 as a sales representative. Plaintiff adopted the title of "account representative" with defendant's permission. Plaintiff reported to Albee, her sole supervisor. Her employment was terminated on February 22, 2008.

Defendant is a corporation located in Eagle River, Wisconsin, engaged in the business of removal of waste and recycling materials from commercial and residential properties. Alan Albee has been the president of defendant Eagle Waste and Recycling since its founding on

4

July 1, 2005.

B. Plaintiff's Sales Duties

Plaintiff's duties included contacting potential commercial customers at their places of business and convincing them to use defendant's waste disposal and recycling services. Plaintiff was required to bring in new customers while maintaining and increasing the business of ongoing customers. On approximately half her work days, she spent between 1 to 4 hours in the office. On average, plaintiff spent between 4 to 8 hours a day outside the office engaged in sales with customers and attracting new clients.

Plaintiff visited commercial sites and suggested better waste handling services to prospective customers. On a typical sales call, she would visit an area business, find out what size containers the business had and determine whether defendant would be able to provide service. If the business was open, plaintiff would try to sell service to the person in charge or she would keep returning until the appropriate person was available. Plaintiff successfully initiated numerous contracts in person.

Plaintiff scheduled sales calls in the mornings and afternoons so that she could meet with customers on the way to and from the office. She controlled the amount of time she spent talking to customers and potential customers.

When targeting new municipalities, plaintiff would meet with business proprietors

attempting to sell them defendant's services and created marketing campaigns. In 2007, plaintiff targeted the city of Tomahawk. After receiving a contract with the city, plaintiff spent three weeks going door to door calling on each commercial and residential prospect convincing prospective customers to sign contracts .

## C. Other Duties

### 1. Promotional and marketing activities

Plaintiff conferred frequently with Albee to determine new locations and businesses to target. After such conferences, plaintiff would develop a marketing campaign that Albee would review. Plaintiff spent time in and out of the office promoting, marketing, and advertising defendant's business. She attended weekly Chamber of Commerce meetings and social functions in an effort to promote sales for defendant. She also distributed business cards and flyers throughout the communities, talking to area business people and selling the services defendant offered. Plaintiff posted flyers advertising defendant's business on public bulletin boards. She developed a marketing campaign, drafted and organized mailings targeted at potential municipal customers, drafted advertisements, talked with local media representatives and helped create defendant's logo.

Plaintiff spent approximately 5 to 6 hours a week promoting the business outside the office, including between 2 to 4 hours a week at Chamber of Commerce meetings. She

spent 4 hours a week developing advertisements, mailings, flyers and other marketing campaigns to place around the community. In addition, she spent another 10 hours a week in her promotional and marketing efforts within the office.

2. Customer service

To retain the business of the customers she acquired for defendant, plaintiff made in-person contact with these customers and attempted to resolve any service problems they had. Part of plaintiff's job included keeping her customer satisfied and appeasing their concerns when they had complaints. Customers typically requested plaintiff's presences to sort out problems ranging from confusion with neighbors' containers to billing and accounting. She would visit customers to deal with "container issues" and once she visited customers to begin recycling services.

3. Record keeping

Plaintiff maintained the "ACT" database. She entered customer and prospect information into the database, such as contract dates, route changes, size of container needed and contact information. Plaintiff used the program to track the expiration of customer contracts so that she could contact the customers and enter into successor agreements. In addition, she worked at insuring that customers received the service they

7

needed and proper billing.

Plaintiff also used the database for bookkeeping. In order to receive commission payments, she had to make sure that defendant collected money owed from her customers. Plaintiff spent approximately 15 hours during a three-week period each month collecting from clients and negotiating alternative payment schedules with clients. She exercised her discretion in adjusting bills if a customer had a complaint or concern, at times adjusting bills without consulting Albee.

Plaintiff was required to file two monthly reports, a commission report and an expense reimbursement report. She spent approximately 4 hours a month preparing and filing commission reports and approximately 20 minutes a month preparing and filing expense reimbursement reports.

4. Negotiations

Plaintiff was authorized to give prices and negotiate with customers. When preparing a bid on a large municipal project, she would calculate the price structure and recommend a range to Albee. After deciding on a final price with Albee, plaintiff would draft a proposal letter to the prospective client that included marketing materials she had created.

Occasionally other office employees consulted plaintiff when Albee was out of the office. For example, if a customer complained that service was not adequately provided,

plaintiff would decide to give the customer a credit on his or her next bill. If a decision had to be made whether to fix a vehicle, she would authorize ordering the parts without consulting Albee.

### D. Plaintiff's Compensation

When plaintiff was hired in September of 2005, her base salary was $384.62 a week plus commission. Beginning January 1, 2006, she received a base salary of $461.54 a week plus commission, which she received for the remainder of her employment with Eagle. She also received $26,319.75 in commissions between December 29, 2005 and December 31, 2007. Defendant did not maintain records of plaintiff's hours worked each week.

## OPINION

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. (c); Celotex Corp. v. Catrett, 477 U.S. 317, 3222 (1986). In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party. Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003). However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its

9

favor.  Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

The Fair Labor Standards Act was enacted to insure a uniform and minimum standard of hours and wages in order to protect the health and safety of workers.  29 U.S.C. § 202(a).  Relevant to this case, the FLSA requires employers to pay overtime compensation to employees who work more than forty hours a week.  29 U.S.C. § 207(a)(1).  However, workers employed as "outsides salespersons" and "bona fide administrative employees" are exempt from these requirements.  29 U.S.C. § 213(a)(1).  Those terms "are defined and delimited . . . by regulations of the Secretary [of Labor]."  29 U.S.C. § 213(a)(1); see also Roe-Midgett v. CC Services, Inc., 512 F.3d 865, 869-70 (7th Cir. 2008).  Aside from defining the scope of these terms, the regulations interpret the scope of § 213(a) generally.

Although federal regulations are not binding in the same way as federal statutes, these regulations issued pursuant to legislative authority are to be given controlling weight unless found to be arbitrary, capricious or contrary to the statute.  Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984).  In this case, neither party argues that any of the regulations are arbitrary or contrary to the statute's intent.  Therefore, I will give deference to the terms as defined in the regulations as having the "force and effect of law."  Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 533 (7th Cir. 1999) (Secretary's regulations have force and effect of law).

10

Defendant contends that plaintiff's work was exempt because she qualifies as an outside salesperson or an administrative employee or because she qualifies as an exempt employee under a combination exemption. 29 C.F.R. § 541.780. Because these exemptions are affirmative defenses, defendant bears the burden of establishing their application. Piscione, 171 F.3d at 533 (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974)). The exemptions are to be narrowly construed against the employer seeking the exemption. Yi v. Sterling Collision Centers, Inc., 480 F.3d 505 (7th Cir. 2007) (citing A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945)). Although defendant contends that all three exemptions could apply, I conclude that plaintiff would be exempt under the sales exemption and would also qualify under the combination exemption.

The Secretary of Labor defines an "outside salesperson" as an employee (1) whose "primary duty" consists of making sales or obtaining orders or contracts for services for which a consideration will be paid by the client or customer and (2) who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty. 29 C.F.R. § 541.500. For this exemption to apply, defendant must make a showing that plaintiff was engaged primarily in sales that occurred away from the employer's place of business.

It is undisputed that plaintiff engaged in sales-related activities. What is disputed is the extent to which those sales could be considered plaintiff's primary duty and whether

11

plaintiff was "customarily and regularly" engaged away from defendant's office when conducting them.

An employee's primary duty consists of the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. The regulations indicate that the amount of time spent performing exempt work is useful, but not dispositive, in determining an employee's "primary duty." Id. The regulations make it clear that a court should look at all the facts surrounding the employee's job in determining how to properly classify an employee. Id. ("Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."). Other federal courts have generally adopted this holistic approach, which requires the court to consider the relationship of exempt to non-exempt duties and how essential they are to an employee's job. Gregory v. First Title of America, Inc., __ F.3d ___, 2009 WL 175155, *2 (11th Cir. 2009); Morgan v. Family Dollar Stores, Inc, 551 F.3d 1233, 1268 (11th Cir. 2008); Ale v. Tennessee Valley Authority, 269 F. 3d. 680, 691- 692 (6th Cir. 2001); Nielsen v. DeVry, Inc., 320 F. Supp. 2d 747, 756 (W.D. Mich 2003); Hodgson v. Krispy Kreme Doughnut Co., 346 F. Supp. 1102, 1103 (D. N.C. 1972) (considering all the facets of employee's job duties in determining proper classification). I agree that this approach should be applied when determining an employee's primary duties.

The factors considered by courts in determining an employee's primary duties include:

(1) the importance of exempt duties to an employee's other duties, Gregory, 2009 WL 175155, *2; (2) how much time is devoted to exempt work, id.; (3) whether an employee's compensation is based wholly or significantly on commission, id.; Nielsen, 320 F. Supp. 2d at 757; Fields v. AOL Time Warner, Inc., 262 F. Supp. 2d 971, 975 (W.D. Tenn. 2003); (4) whether an employee independently solicits new business, id.; and (5) whether the employee receives little or no supervision. Gregory, 2009 WL 175155, *2; Fields, 262 F. Supp. at 975; Krispy Kreme, 346 F. Supp at 1104-06.

Plaintiff's duties involved contacting potential customers and soliciting new business. She accomplished this by making daily visits in the mornings and afternoon to the customer's place of business. In conducting these visits, plaintiff made her own schedule and was not supervised directly by any employee or manager at defendant's business. Although plaintiff received a weekly salary, she was also paid in part by the commission she generated from her sales of defendant's services. In the course of her employment with defendant, she received close to one-third of her compensation in the form of commission. Therefore, generating new customers and sales was an important and integral part of plaintiff's job.

In addition, plaintiff engaged in a number of activities only indirectly related to sales, but benefiting her sales activities. Part of plaintiff's duties included working with Albee to develop plans and materials to attract new customers for defendant. Aside from designing marketing and promotional materials, plaintiff attended local Chamber of Commerce

13

meetings and social functions to promote sales for defendant. In addition, she engaged in activities related to resolving account or service disputes in order to retain her customers and make sure they paid their bills promptly. All of these activities directly affected the commission payments she received.

Plaintiff independently sought out new clients and business. She did not merely promote defendant's business; she had a duty and an incentive to pursue new clients as a means of increasing her own compensation. Last, the undisputed facts show that plaintiff had significant independence when pursuing new clients. Plaintiff was not supervised when making in-person sales pitches and there are no facts suggesting that she was monitored when conducting customer service duties related to her accounts.

In this case, the most of the relevant factors suggest that plaintiff's primary duty involved outside sales. Plaintiff's sales duties were more important than any of her other duties because they had a direct impact on her compensation and they were a significant component of her daily activities. Moreover, a large portion of plaintiff's work that did not directly involve sales was directed towards promoting future sales or retaining current customers.

The only factor remaining in equipoise is the amount of time plaintiff spent on her sales duties relative to her other duties. The facts indicate that plaintiff's direct sales duties and the activities related to sales were a significant portion of her work. However, plaintiff

14

contends that the non-sales work she conducted was "promotional work" because it was "incidental to sales made, or to be made, by someone else," 29 C.F.R. § 541.504(a), and therefore, cannot be included as part of her exempt work.  Id.  For support, plaintiff cites Amendola v. Bristol-Myers Squibb Co., 558 F.Supp. 2d 459, 470-71 (S.D.N.Y. 2008), in which the district court held that the plaintiff employees were not exempt workers because their duties did not involve direct sales.  Instead, the plaintiff employees were required to convince physicians to prescribe certain drugs; the sales were an incidental byproduct of plaintiff's work.  Id.  Amendola is readily distinguishable.  Plaintiff communicated with customers directly and secured contracts from the customers for her own financial benefit; her job was not limited to promoting defendant's services.  Therefore, she engaged in direct sales and not "promotional work" as defined by 29 C.F.R. § 541.504.  From the undisputed facts and considering the full scope of plaintiff's duties, I find that plaintiff's primary duty involved outside sales.

   The second prong of the outside sales exemption requires defendant to show that plaintiff was "customarily and regularly engaged away from the employer's place of business or place of business in performing" sales.  29 C.F.R. § 541.500.  The only argument raised by plaintiff is that she was in the office at least 50% of the time.  However, plaintiff misinterprets the language of the regulation.  It does not require an employee be away from the office a majority of the time; it requires only that an employee be away from the office

15

when conducting her primary duties, which in this case are her sales activities. Ackerman v. Coca-Cola Enterprises, Inc., 179 F.3d 1260, 1266(10th Cir. 1999) (plaintiff employees "consummated the sales of Coca-Cola products at the stores that they visited"); Jewel Tea Co. v. Williams, 118 F.2d 202, 207-08 (10th Cir.1941) ("Such salesmen, to a great extent, work[ ] individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation.").

In this case, the undisputed facts show that plaintiff customarily and regularly engaged in soliciting new business away from the office. She would meet new customers on the way to and from work, at social gatherings or when going door-to-door. Therefore, plaintiff's primary duty involved sales conducted customarily and regularly away from defendant's office. Accordingly, I conclude that plaintiff was an exempt "outside sales person" for purposes of the FLSA and I will grant summary judgment in defendant's favor.

Although I have concluded that sales were plaintiff's primary duty, I note that even if they were not, plaintiff would still be considered an exempt employee under the FLSA's "combination exemption." 29 C.F.R. § 541.708. The combination exemption addresses the situation in which an "employee perform[s] duties that fall under more than one individual exemption, none of which separately represents her primary duty . . . . In other words, the combination exemption provides a mechanism for cobbling together different exempt duties

16

for purposes of meeting the primary-duty test. " Intracomm, Incorporated v. S. Bajaj, 492 F.3d 285, 294 (4th Cir. 2007) (citing Secretary of Labor's amicus brief on proper interpretation of 29 C.F.R. § 541.700).

As defendant points out, for most of the time plaintiff worked for defendant, her duties would qualify as either exempt sales or administrative work, which means plaintiff would also be exempt under the combined exemption. 29 C.F.R. § 541.708. To the extent plaintiff's work was not "sales," it was "administrative," because she was "(1) [c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . . ; (2) [her] primary duty [was] the performance of office or *non-manual work* directly *related to the management or general business operations* of the employer or the employer's customers; and (3) [her] primary duty include[d] the *exercise of discretion and independent judgment* with respect to matters of significance." 29 C.F.R. § 541.200 (emphasis added) ; see also 29 C.F.R. 541.201 ("Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . accounting; . . . quality control; purchasing; procurement; advertising; marketing; research; . . . personnel management; . . . public relations, . . computer network, internet and database administration; . . . and similar activities"). Therefore, defendant would be entitled to summary judgment under the combination exemption, 29 C.F.R. § 541.708, because nearly all of the time plaintiff worked for defendant she was involved in exempt work under the FLSA.

17

ORDER

IT IS ORDERED that

1. Plaintiff Tammy Schmidt's consolidated motion for leave to file a sur-reply brief, corrected proposed findings of fact, and responses to defendant's proposed findings of fact is DENIED.

2. The motion for summary judgment by defendant Eagle Waste & Recycling, Inc. is GRANTED.

3. The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 25th day of February, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge